**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ARIANA HEIM,

                                    Plaintiff,

          - v -                                                    Civ. No. 1:16-CV-1280
                                                                          (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON              STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                  DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN.
COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

**<u>MEMORANDUM-DECISION and ORDER</u>**[1]

          Currently before the Court, in this Social Security action filed by Ariana Heim

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's Motion for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 7 & General Order 18.

Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 10 & 12. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is **affirmed,** and Plaintiff's Complaint is **dismissed**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1979, making her 34 years old at the alleged onset date and 35 years old at the date of the ALJ's decision. Dkt. No. 9, Admin. Tr. ("Tr."), p. 146. Plaintiff reported obtaining a GED and completing some college. Tr. at p. 29. Plaintiff has past work as a personal care aide, retail sales clerk, and gas station clerk. Tr. at p. 150. Generally, Plaintiff alleges disability due to a seizure disorder, degenerative joint disease, sleep apnea, bipolar disorder, and migraines. Tr. at p. 149.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on September 19, 2013. Tr. at p. 60. Plaintiff's applications were initially denied on November 21, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 63-68. Plaintiff appeared at a hearing before ALJ Paul F. Kelly on April 14, 2015. Tr. at pp. 25-47. On April 30, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 10-24.

On September 9, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at p. 1.

## C.  The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014.  Tr. at p. 15.  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 29, 2013, the alleged onset date.  *Id*.  Third, the ALJ found that Plaintiff's alleged impairments including bipolar disorder, asthma, sleep apnea, obesity, degenerative joint disease, and right-sided hearing loss are severe.  Tr. at pp. 15-16.  Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 16.  Specifically, the ALJ considered the criteria of the 12.00 Listings (mental disorders).  *Id*.  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

> lift up to twenty pounds occasionally, lift and carry up to ten pounds frequently and sit, stand, and walk for about six hours in an eight-hour workday with normal breaks. She can no more than occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, or crawl, and never climb ladders, ropes or scaffolds.  The claimant also should avoid concentrated exposure to excessive noise, irritants such as fumes, odors, dust, and gases, as well as avoid all exposure to operational control of moving machinery, unprotected heights, and hazardous machinery.  Additionally, the claimant is capable of work

> that is limited to simple routine tasks with no more than
> occasional interaction with the public and coworkers.

Tr. at pp. 16-17. Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. at p. 19. Seventh, and last, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 19-20. The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Plaintiff makes two arguments in support of her Motion for Judgment on the Pleadings. *See generally* Dkt. No. 10, Plaintiff's Memorandum of Law ("Pl.'s Mem. of Law"), pp. 4-8. First, Plaintiff argues that the ALJ committed reversible error by failing to properly apply the "special technique" for the evaluation of mental health impairments. *Id.* at pp. 4-7. Specifically, Plaintiff argues that the ALJ did not make any specific finding that Plaintiff had functional limitations on the "five point scale related to any of the four broad categories of functioning" and that the ALJ appeared to make "a finding that all limitations fall between the mild and moderate," a finding that Plaintiff argues is not supported by any evidence. *Id.* at pp. 5-6. Plaintiff notes that Agency consultant A. Herrick, Ph.D., opined she had moderate limitations in her ability to maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and interact with the general public. *Id.* Plaintiff notes

that consultative examiner Alan Dubro, Ph.D., indicated that Plaintiff would have marked limitations in attention and concentration as well as interactions with others. *Id.* at p. 6. Plaintiff argues that, despite acknowledging these opinions and appearing to afford more weight to Dr. Herrick's opinion because of inconsistencies in Dr. Dubro's opinion, a review of Dr. Dubro's opinion does not reveal inconsistencies. *Id.* Plaintiff also contends that the ALJ's decision lacks a detailed rating of the four broad categories of functioning and a comparison to the criteria of the relevant listings as required by the regulations. *Id.* at pp. 6-7.

Second, Plaintiff argues that the ALJ committed reversible error by formulating an RFC that was vague with respect to Plaintiff's ability to hear. *Id.* at pp. 7-8. Specifically, Plaintiff argues that it is unclear what the ALJ meant by "concentrated exposure to excessive noise" within the RFC and that this vagueness is not harmless error. *Id.* Plaintiff also notes that the positions that the ALJ identified at Step Five require exposure to level 3 (moderate) noise in the workplace. *Id.* Plaintiff argues that the ALJ failed to inquire about this conflict (whether the limitation is for a quiet work environment) when relying upon the testimony of the vocation expert ("VE") pursuant to Social Security Ruling ("SSR") 00-4p. *Id.*

### 2. *Defendant's Motion for Judgment on the Pleadings*

Defendant makes two arguments in support of her Motion for Judgment on the Pleadings. *See generally* Dkt. No. 12, Defendant's Memorandum of Law ("Def.'s Mem. of Law") at pp. 4-11. First, Defendant argues that the ALJ properly evaluated Plaintiff's mental

impairments at Steps Two and Three. *Id.* at pp. 4-8. Specifically, Defendant argues that the ALJ stated at Step Two that he considered the four broad areas of functioning (referred to as the paragraph B criteria under the listings) and further explained that Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace were no more than moderately limited. *Id.* at p. 5. Defendant argues that there is no ambiguity in the ALJ's findings regarding these three areas of functioning because these findings correspond with his finding that Plaintiff's mental impairment was severe. *Id.* Defendant also argues that the ALJ explained that his finding was supported by Dr. Herrick's assessment (who found that Plaintiff had no more than moderate limitations) and gave great weight to this opinion. *Id.* at p. 6. Defendant argues that the ALJ's reliance on this opinion to support his findings on the four broad functional areas is permissible. *Id.*

Defendant also argues that the ALJ acknowledged that Dr. Dubro evaluated Plaintiff and opined more significant limitations. *Id.* at pp. 6-7. Defendant argues that Dr. Herrick's analysis of the evidence explains why the ALJ afforded Dr. Herrick's opinion greater weight than Dr. Dubro's opinion. *Id.* Defendant notes that Dr. Herrick acknowledged that the record showed that Plaintiff had a history of mood disorder for which her primary care physician prescribed Lexapro in June 2013, but that other than a consultative examination ("CE") performed by Dr. Dubro, there was meager evidence of treatment for her mental impairment. *Id.* Defendant also notes that Dr. Herrick acknowledged Dr. Dubro's findings and opinion that Plaintiff was markedly limited in interacting with others and concentration,

persistence, and pace, but noted that Plaintiff drove herself to the examination, calling into question whether she was actually markedly limited in concentration and attention. *Id.*

Defendant also argues that the ALJ properly observed that the overall record supported the finding that Plaintiff had no more than moderate limitations in the first three broad functional areas. *Id.* at p. 7. Defendant argues that because the ALJ found that Plaintiff had no more than moderate limitations in the first three functional areas, there was no requirement for the ALJ to make the same assessment at Step Three, where the claimant must show marked limitations to meet a Listing. *Id.* at p. 8.

Second, Defendant argues that the ALJ's RFC finding about Plaintiff's hearing limitation was not impermissibly vague. *Id.* at pp. 9-11. Specifically, Defendant asserts that, when questioning the VE at the administrative hearing, the ALJ asked the VE to assume, among other things, that the hypothetical individual should avoid concentrated exposure to excessive noise, and that, based on the assumptions provided by the ALJ to the VE, the VE testified that the individual could perform jobs in the national economy. *Id.* at p. 9. Defendant argues that the VE understood the meaning of the term because she identified jobs that an individual with such a limitation could perform and that Plaintiff, represented by counsel at the hearing, did not ask the VE whether she understood what the ALJ meant by concentrated exposure to excessive noise. *Id.* at p. 9. Defendant argues that the ALJ's statement that Plaintiff needed to work in a quiet environment was not the actual finding of the ALJ. *Id.* at p. 10.

Defendant also contends that Plaintiff has not shown that there is a conflict between the VE's testimony and the Dictionary of Occupational Titles because Plaintiff has not shown that the jobs identified by the VE would require concentrated exposure to excessive noise. *Id.* Defendant argues that, although Plaintiff claims that the jobs identified require a moderate noise level, Plaintiff has not established that exposure to a moderate level of noise would run afoul of the need to avoid concentrated exposure to excessive noise. *Id.* at pp. 10-11.

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential

evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III.  ANALYSIS

#### A.  Whether the ALJ Properly Evaluated Plaintiff's Mental Impairment at Steps Two and Three

In cases where a mental impairment is present, the ALJ is required to apply a special psychiatric review technique when assessing its severity and impact on the claimant's work-

related functioning. *Lewis v. Colvin*, 122 F. Supp. 3d 1, 6 (N.D.N.Y. 2015); 20 C.F.R. §§ 404.1520a & 416.920a (2015). The regulations indicate that the technique requires the ALJ to first evaluate the pertinent symptoms, signs, and laboratory findings to determine whether there is a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1) & 416.920a(b)(1). Second, the ALJ must rate the degree of functional limitation resulting from those impairments by considering all relevant and available clinical signs and laboratory findings, the effects of the claimant's symptoms, and how the claimant's functioning might be affected by factors including chronic mental disorders, structured settings, medications, and other treatment. 20 C.F.R. §§ 404.1520a(b)(2) & 416.920a(b)(2). In rating the claimant's mental impairment, the ALJ must consider multiple issues and all relevant evidence, assessing and rating the claimant's functioning in the four broad areas of activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation; in doing so, the ALJ should consider the extent to which the claimant's impairments interfere with her ability to function independently, appropriately, and effectively on a sustained basis. 20 C.F.R. §§ 404.1520a(c)(2)-(3) & 416.920a(c)(2)-(3). After rating the claimant's mental impairments accordingly, the ALJ must determine whether the claimant's mental impairments are severe, whether they meet or equal the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, App. I, and (if they do not meet or equal a listing) what effect they have on the claimant's RFC. 20 C.F.R. §§ 404.1520a(d)(1)-(3) & 416.920a(d)(1). The ALJ is required to incorporate the pertinent findings and conclusions

based on the technique into the written decision, showing the significant history (including examination and laboratory findings) and the functional limitations that were considered in reaching a conclusion about the severity of the claimant's mental impairments. 20 C.F.R. §§ 404.1520a(e)(4) & 416.920a(e)(4).

On November 8, 2013, consultative examiner Dr. Dubro noted that Plaintiff was cooperative during the exam and presented in an adequate manner with slouched posture, sluggish motor behavior, a coherent and goal-directed thought process, blunted affect, impaired attention and concentration secondary to distractibility associated with a depressed and tearful mood, impaired recent and remote memory skills secondary to distractibility associated with a depressed mood along with emotional distress, and cognitive functioning estimated to fall in the below average range. Tr. at pp. 311-12. Plaintiff was able to establish (but did not consistently maintain) eye contact, did not speak spontaneously, and frequently needed questions repeated to her secondary to concentration difficulties. *Id*. Dr. Dubro diagnosed bipolar disorder. Tr. at p. 313. He opined a guarded prognosis and that Plaintiff

> can understand directions. The claimant displays moderate difficulty in her ability to attend, remember, and follow directions. The claimant's attention span and concentration is markedly impaired. The claimant is seen as an individual who would experience marked difficulty in learning new tasks. The claimant is displaying moderate difficulty in her ability to perform daily tasks independently and on a regular basis. She is displaying marked difficulty in her ability to perform complex tasks independently and on a regular basis. She is displaying marked difficulty in her ability to interact with others. She is displaying moderate difficulty in her ability to make day to day decisions. The claimant is seen as an individual who would display marked difficulty in her ability to regularly attend to a

> routine and maintain a schedule.  The results of the examination
> are consistent with psychiatric problems which significantly
> interfere with the claimant's ability to function on a daily basis.

*Id*.  He indicated that Plaintiff would require assistance with managing money due to her

concentration difficulties.  Tr. at p. 314.

At the initial determination level in November 2013, state Agency psychological

consultant Dr. Herrick noted that the consultative examiner ("CE") opined that Plaintiff

would have marked limitations in her ability to interact with others and marked difficulties

in attention, concentration, and pace.  Tr. at p. 56.  Dr. Herrick opined that Plaintiff had

moderate restriction of activities of daily living, moderate difficulties in maintaining social

functioning and concentration, persistence or pace, and had not had repeated episodes of

decompensation of extended duration.  Tr. at pp. 51-52, 54-56, 60, & 320-21.  In the

narrative portion of his opinion, Dr. Herrick noted that "unfortunately evidence in [the] file

is sparse, . . . She seems to have had no psychiatric care other than that from her [primary

care physician], . . . [she was] taken out of work because of neuro. and not psychiatric

reasons, . . . but [had] an opinion by CE that she is markedly impaired."  Tr. at p. 56.  Dr.

Herrick also noted that Plaintiff reported having been taken off her job in August 2013 due

to having had a seizure, but reported to the CE that the reason she felt as if she could not

work was her psychiatric impairment.  *Id*.  Dr. Herrick indicated that he "thought that within

one year of onset and psychiatric [treatment] that it would be reasonable to expect that the

claimant could again participate in gainful, competitive employment."  *Id*.

When considering Plaintiff's severe impairments, the ALJ summarized the special technique and considered the paragraph B and C criteria of the 12.00 Listings. Tr. at pp. 15-16. The ALJ noted that

> consideration was provided to the entire record, which indicates that the claimant's activities of daily living and [her] ability to maintain socialization or maintain concentration, persistence, or pace were no more than moderately affected. This is supported by the overall totality of the record, including the testimony provided at the hearing and the report of Dr. Herrick, the State Agency consultative examiner, who assessed the same moderate restrictions (Exhibit 1A). Dr. Herrick acknowledged the report of Dr. Dubro, but found inconsistencies in the report and her review of the record. Although Dr. Herrick is a non-examining source, great weight is afforded to her conclusions as they are supported by the overall record, or lack thereof. Moreover, the moderate part B limitations are noted throughout the record and are summarized below.

Tr. at p. 16. The ALJ found that Plaintiff did not meet or medically equal the B or C criteria of the 12.00 Listings because her mental impairments did not cause any marked limitations in functioning or any repeated episodes of decompensation of an extended duration and Plaintiff was "independent and capable of functioning outside of a highly supportive arrangement, and there is nothing to suggest that the claimant is incapable of handling marginal adjustments." *Id*.

Plaintiff argues that the ALJ's decision lacks a detailed rating of the four broad categories of functioning and a comparison to the criteria of the relevant listings as required by the regulations. Pl.'s Mem. of Law at pp. 6-7. The Court disagrees. The ALJ's decision indicates that he found that Plaintiff's activities of daily living and her ability to maintain

socialization or maintain concentration, persistence or pace were no more than moderately affected. Tr. at p. 16. The ALJ also noted that these findings were supported by the overall totality of the record, including the hearing testimony and report of Dr. Herrick (who assessed the same moderate restrictions). *Id.* Contrary to Plaintiff's argument, it is clear that the ALJ properly applied the special technique. *See Shaw v. Comm'r of Soc. Sec.*, 2013 WL 316616, at *8 (N.D.N.Y. Jan. 28, 2013).

When considering Plaintiff's RFC, the ALJ appropriately afforded very little weight to the opinion of Dr. Dubro because it appeared that this one-time examination was based on Plaintiff's relatively subjective complaints. *Cuenca v. Comm'r of Soc. Sec.*, 2016 WL 2865726, at *8 (N.D.N.Y. Apr. 19, 2016), *report and recommendation adopted sub nom. Cuenca v. Colvin*, 2016 WL 2858858 (N.D.N.Y. May 16, 2016). Additionally, there was little medical evidence to support Dr. Dubro's conclusions, and Plaintiff's reports to Dr. Dubro were not consistent with reports to other sources. Tr. at p. 18 (citing Tr. at pp. 315-318 & 391). The ALJ noted that the record showed ongoing medication use, but not much evidence that would correlate with the level of severity indicated by Dr. Dubro's opinion and that Plaintiff reported full activities of daily living (including showering, dressing, cooking, cleaning, and shopping) on the day of the CE. *Id.* The ALJ also noted that, within the March 2014 records of Plaintiff's primary care provider, Jennifer Baker-Porazinski, M.D., (who prescribed Plaintiff's mental health medications) was a note indicating that Plaintiff was able

to return to work, something that Dr. Baker-Porazinski and that treating source believed would help with Plaintiff's self-esteem. Tr. at pp. 18 & 391.

The ALJ's analysis at Steps Two and Three indicates he considered the requirements of the 12.00 Listings and relied on the evidence (including Plaintiff's testimony and the opinions of record) when considering the conflicts therein, enabling this Court to conduct a meaningful review of his findings. *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff also argues that, contrary to the ALJ's apparent reliance on Dr. Herrick's opinion, a review of Dr. Dubro's opinion (indicating marked limitations to interactions with others and attention and concentration) does not reveal inconsistencies and that Dr. Herrick's relatively positive analysis was actually contingent upon Plaintiff starting psychiatric treatment within one year (including the conclusion that it would be reasonable to expect Plaintiff could again participate in gainful competitive employment). Pl.'s Mem. of Law at p. 6. The Court finds this argument unpersuasive. As Dr. Herrick noted, Plaintiff has a sparse mental health treatment history with no treatment other than that from her primary care physician, and she was taken out of work because of seizures rather than for psychiatric reasons. Tr. at p. 56. The ALJ's reliance on this opinion from a qualified expert in the field of social security disability in making his findings at Step Two and Three is supported by substantial evidence. *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012)

(summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

For the above reasons, substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairment at Steps Two and Three.

### B. Whether the ALJ's RFC and Step Five Determinations Are Supported by Substantial Evidence

RFC is defined as "what an individual can still do despite his or her limitations. . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.' " *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . and [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ determined that Plaintiff has the RFC to perform a modified range of light work including the limitation to "avoid concentrated exposure to excessive noise." Tr. at pp.16-17. When considering Plaintiff's RFC, the ALJ noted that there is evidence of right-sided hearing loss establishing avoidance of excessive noise. Tr. at p. 17. The ALJ also noted that Plaintiff has muffled hearing and should work in a quiet work environment. *Id*. At the hearing, the ALJ posed a hypothetical question to the VE consistent with the RFC including avoidance of concentrated exposure to excessive noise and, in response, the VE

indicated that an individual with such limitations could perform work as an assembler, shoe packer, and marking clerk.  Tr. at pp. 44-45.

Plaintiff argues that the ALJ committed reversible error by formulating an RFC that was vague with respect to Plaintiff's ability to hear and that the ALJ failed to inquire about a conflict between the RFC and the jobs identified by the VE (which require a level 3 (moderate) exposure to noise, which is greater than a level 2 (quiet) exposure to noise according to the *Selected Characteristics of Occupations* ("SCO") (U.S. Dep't of Labor, 1993)).  Pl.'s Mem. of Law at pp. 7-8.  As Defendant points out, however, the ALJ's statement that Plaintiff needed to work in a quiet environment was not the actual finding of the ALJ, nor does it override the ALJ's articulated RFC finding for avoidance of concentrated exposure to excessive noise.  Tr. at p. 17.  Further, the ALJ's RFC limitation indicates an avoidance of *concentrated* exposure to excessive noise, not avoidance of *all* exposure to excessive noise, indicating that the jobs identified by the VE (including those with a moderate noise level) are consistent with the RFC limitation.  *Id.*  Use of the phrase "excessive noise" in an RFC has been upheld by the courts. *Brown v. Astrue*, 2012 WL 2953213, at *8 (W.D.N.Y. July 19, 2012).

Plaintiff notes that the SCO defines a "quiet noise" level as the type of noise in a library, many private offices, funeral reception, golf course, or art museum, while "moderate noise" levels are illustrated as a business office where typewriters are used, a department store, grocery store, light traffic, or fast food restaurant.  Pl.'s Mem. of Law at pp. 7-8.  It

should be noted that Plaintiff did not allege hearing loss as an impairment at the initial determination level, but did report having a hard time hearing if she is in a loud area at the administrative hearing.  Tr. at pp. 40, 48, & 315.  She testified that a grocery store or even her house can be too loud if the television is on and her children are talking, but reported daily activities at the November 2013 internal medicine consultative examination that included watching television and listening to the radio.  Tr. at pp. 40 & 315.  It does not appear that Plaintiff mentioned her hearing loss as an impairment at that examination, nor did consultative examiner Kautilya Puri, M.D., diagnose a hearing impairment or opine any limitations related to such an impairment.  Tr. at pp. 315-19.  The evidence of record and the ALJ's analysis indicates that he properly accounted for Plaintiff's testimony regarding her hearing impairment in his RFC with a limitation that is not impermissibly vague.  Notably, substantial evidence supports the ALJ's decision to decline to limit Plaintiff to Level 2 noise exposure; Plaintiff has not cited any evidence other than her own subjective reports to support the inclusion of such a limitation.

For the above reasons, substantial evidence supports the ALJ's RFC and Step Five determinations.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties.


Dated: March 29, 2018
        Albany, New York


Daniel J. Stewart
U.S. Magistrate Judge

*-21-*